# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of M.C.D.P. (D.O.B. 07/07/2003), | ) ) ) | No. 68401-9-I |
| Minor Child. | ) ) | DIVISION ONE |
| HEATHER PHILLIPS and COURT-APPOINTED SPECIAL ADVOCATE, | ) ) ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, and JUSTINO DELGADO LOZANO, | ) ) ) ) ) ) | |
| Respondents. | ) ) | FILED: April 1, 2013 |

SPEARMAN, A.C.J. — When making a placement decision in a dependency proceeding, a court must give effect to a child's right to conditions of basic nurture, physical and mental health, and safety where such rights are in conflict with a biological parent's legal rights to the care and custody of the child. In re the Dependency of J.B.S., 123 Wn.2d 1, 8-9, 863 P.2d 1344 (1993). Because we determine that the superior court, on revision, applied an incorrect legal standard and did not consider evidence relevant to the dependent child's best interests, we reverse and remand. But we affirm the superior court's denial of a request for a continuance and a motion for the appointment of independent counsel for the dependent child.

FACTS

This appeal arises from a dependency action regarding nine-year-old

M.C.D.P. (D.O.B.: 7/7/2003). In June 2007, when M.C.D.P. was four years old, she

was found dependent as to her mother, Heather Phillips, who suffers from severe

physical and mental impairments. Around that time, Justino Delgado Lozano

(hereinafter "Delgado") was identified as M.C.D.P.'s biological father. In October

2007, Delgado agreed to entry of dependency as to him due to concerns over his

drug and alcohol use and because he had no relationship with M.C.D.P. In

November 2008, M.C.D.P. was placed with Delgado and the dependency as to him

was dismissed in June 2009. In September 2009, the Department of Social and

Health Services (DSHS) filed a dependency petition and removed M.C.D.P. from

Delgado's custody after she accused him of touching her inappropriately. After an

investigation, DSHS determined the allegations had no merit and that Phillips may

have coached M.C.D.P. into making them. The dependency was dismissed in

January 2010 and M.C.D.P. was returned to Delgado.[1]

In October 2010, Delgado was detained by immigration authorities and

scheduled for deportation to Mexico. M.C.D.P. was unable to accompany him

because she did not have a passport and did not share his last name. Accordingly,

DSHS filed a dependency petition on October 26. M.C.D.P. was placed in foster care,

where she currently remains. Delgado was deported sometime thereafter.

---

[1] M.C.D.P. stayed at Ruth Dykeman Children's Center for part of the time she was removed from Delgado's care. There, she displayed violent and aggressive behaviors. After DSHS's investigation, Delgado agreed to a brief voluntary placement agreement to allow M.C.D.P. to continue in services at Ruth Dykeman and he also agreed to enroll M.C.D.P. in counseling and Parent-Child Interaction Therapy (PCIT) upon her return to his care. He did not ultimately enroll M.C.D.P. in counseling or PCIT, reporting that due to his full-time job he was unable to do so.

2

On December 13, 2010, DSHS filed a motion requesting (1) a continuance of the pre-trial conference and fact finding hearing; (2) concurrent jurisdiction with the district court to allow a petition to add Delgado's last name to M.C.D.P.'s; (3) authority to obtain a passport for M.C.D.P.; (4) authority to transport M.C.D.P. to Mexico; and (5) authority to place M.C.D.P. with Delgado in Mexico.[2] A DSHS social worker's declaration accompanying the motion stated that Delgado was a capable parent, M.C.D.P. had done well in his care, and a dependency was not necessary. King County Juvenile Court Commissioner Richard Gallaher granted DSHS's first three requests, denying the fourth and fifth.

Phillips entered an agreed dependency order on April 20, 2011. Delgado entered an agreed dependency and disposition order on May 18.[3] The order notes, "Father cannot return to United States. [M.C.D.P.] cannot travel to Mexico." Clerk's Papers (CP) at 64. Among the facts establishing dependency is that "[c]oncerns have been reported about the father leaving [M.C.D.P.] with babysitters longer than arranged and his drinking alcohol, and that [M.C.D.P.] looked unkempt. The father denies these allegations." CP at 63. The order requires Delgado to participate in twice-weekly urinalysis (UA) testing, including for alcohol, for 60 days and to

---

[2] Phillips opposed all but the first request. The guardian ad litem (GAL), April Rivera, agreed only to the first three. Rivera expressed concerns about Delgado's parenting. She reported that since residing in foster care, M.C.D.P. had made statements indicating that she did not receive proper food while in Delgado's care and had been left to sleep in Delgado's car at night while he was in a casino, and that Delgado would drink alcohol in the morning. Rivera wrote that in May 2010, a Child Protective Services referral was received from Federal Way Public Schools indicating that Delgado was supposed to pick up M.C.D.P. from a babysitter on a particular Friday but did not do so until after the weekend.

[3] Delgado agreed to dependency under RCW 13.34.030(6)(c) "in that the child has no parent, guardian or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." CP at 64. By this time, CASA Carol Moore had replaced Rivera and signed off on Delgado's order of dependency.

cooperate with a home study and follow recommendations. The order states the permanent plan is to return M.C.D.P. to a parent, which could include Delgado's home in Mexico.

In Mexico, Delgado made efforts to prepare for M.C.D.P.'s arrival. Mexican authorities reported in June 2011:

> Currently [Delgado] is employed full time, with a steady income and benefits, he has a suitable schedule that allows him to care for his daughter and in addition he lives with his mother, Mrs. Soledad, who is able and willing to help him in the raising of his daughter.

CP at 205. Home studies in Mexico were conducted in December 2010 and April 2011. The first, at Delgado's sister's home, was unfavorable, noting his unstable situation. The second, at his mother's home, noted he was employed and the home was suitable but raised concerns about the changes M.C.D.P. would experience and the need for private bilingual education.

Following the first dependency review hearing in August 2011, Commissioner Gallaher found Delgado in compliance (though he noted Delgado needed to start UAs), stated that return to a parent was still the permanent goal, and rejected adoption as an alternative plan. On September 15, after a passport was obtained for M.C.D.P. and a court order changed her name to include his, Delgado filed a motion requesting that M.C.D.P. be placed with him in Mexico. DSHS supported placement with him but requested preconditions, including a Family Team Decision Making meeting and a courtesy social worker to be assigned in Mexico. It also requested that placement be contingent on UA testing, counseling for M.C.D.P., regular contact

4

between Delgado and DSHS, and home visits. Phillips and the CASAs opposed placement with Delgado.[4]

After reviewing the CASAs' submissions to the court, DSHS told the court more information was needed and it no longer supported placement with Delgado at that time. DSHS was concerned with the opinion of M.C.D.P.'s therapist that she suffers from anxiety disorder, has strong attachments to her maternal and foster families, and should not be moved until an attachment therapist evaluated how transition might affect her psychological well-being. DSHS asked the court to grant it authority to place M.C.D.P. with Delgado once (1) an attachment assessment of M.C.D.P. was conducted and any results were considered; (2) Delgado completed the home study and followed recommendations; (3) the home study recommended placement; and (4) DSHS's previous requests were met. In October 2011, Delgado moved to strike his placement motion, agreeing to an attachment assessment of M.C.D.P. but disputing that the April 2011 home study was incomplete. The court granted his motion to strike.

On December 1, 2011, in an "attempt to move this case forward," Delgado filed the subject motion, noting DSHS had not completed M.C.D.P.'s assessment. He

---

[4] Gloria Overgaard was assigned to be co-CASA with Moore in September 2011. The CASAs' main concerns with the proposed move, as detailed in their report, are summarized as follows: (1) there had been no verification M.C.D.P. would receive educational and therapeutic services in Mexico; (2) there had been no verification she would receive the recommended evaluations and testing; (3) a move might undermine the behavioral progress M.C.D.P. had made in her current stable placement; (4) Delgado's alcohol and drug issues had not been addressed; (5) M.C.D.P.'s rights as an American citizen in Mexico had not been determined; (6) the CASAs needed to approve plans regarding safety, transition, and reunification; (7) DSHS's request for a "courtesy social worker" in Mexico was insufficient because social workers in Mexico do not remove children from homes without a lengthy process; (8) both home studies expressed concern for M.C.D.P. should she be relocated; (9) Delgado had not shown he could pay for private bilingual education; and (10) there was no visitation plan to ensure M.C.D.P. would remain in contact with her maternal family. The CASAs pointed out that M.C.D.P.'s expressed wishes were to live with her foster parents and that she did not want to go to Mexico, attaching a letter she wrote to that effect.

requested (1) a father-child attachment assessment (to be conducted in Mexico), (2) a visit with M.C.D.P. in Mexico, and (3) that M.C.D.P. be placed with him. He claimed he had re-engaged with counseling and complied with UAs for eight weeks,[5] and noted that a discussion with Mexican contacts who conducted the home study determined that it had been completed but there were questions about whether services were required. DSHS, Phillips, and the CASAs opposed Delgado's motion.[6] DSHS argued placement with Delgado was premature given M.C.D.P.'s mental health issues and noted Dr. JoAnne Solchany had begun the assessment. On December 15, Commissioner Gallaher heard oral argument and denied Delgado's motion, stating in a written ruling:

> The best interests of the child are the paramount concern of the court, and although they must be balanced with the fundamental rights of parents, the best interests of the child outweigh the rights of parents. It is not only contrary to [M.C.D.P.'s] best interest to be placed or have a visit with her father in Mexico, it would be detrimental to [her] to grant these motions at this time.

CP at 1135-36.

Delgado moved for revision, arguing that a parent must be found unfit by clear and convincing evidence before a court could consider the child's best interests. DSHS, Phillips, and the CASAs opposed the motion, arguing that the overriding consideration in placement decisions is the best interests of the child. The superior

---

[5] The submissions show clean results for drugs but do not address alcohol.

[6] DSHS argued an attachment assessment was necessary under the dependency order because the order required M.C.D.P. to participate in counseling and recommendations, and the assessment was recommended by her therapist. DSHS noted M.C.D.P. had become more anxious, stopped talking to Delgado on the phone, and would not let caregivers out of her sight. DSHS would not support placement in Mexico until it was clear the move would not negatively impact her and placement there would be final. The CASAs emphasized the same issues noted in their previous submissions to the court and stated that M.C.D.P. had been determined to have a learning disability and social skills deficits.

court granted Delgado's motion and ordered DSHS to place M.C.D.P. with Delgado in Mexico. Its January 23, 2012 order stated:

> The court's analysis must [begin] with whether or not there is a parent available and capable of safely parenting this child. If the answer to that question is yes, we do not reach the "best interest of the child" test. The legislature and case law is clear that parents['] right to parent their children must be protected that these decisions must not turn on which family can provide the "most or the best" for the child. Here the father's only deficiency was his inability to immediately take his child with him when he was deported. In fact the Department was in favor of moving the child to Mexico and the only barrier was the passport/immigration issue.[7] He has corrected that "deficiency" and wants his child returned. Neither the Department nor CASA cite any credible evidence that the father's ability to parent this child changed once he was in Mexico.

CP at 1230-31.

Phillips filed a motion for stay and reconsideration, supported by the CASAs. At the February 13, 2012 hearing, the CASAs informed the superior court that Solchany's assessment had been completed and requested a continuance of the motion for reconsideration if the court would not consider the report. The court denied the request for a continuance and the motion for reconsideration, but stayed its January 23 order to allow an appeal.[8] On February 17, Phillips filed a motion requesting appointment of independent counsel for M.C.D.P. The Children and Youth Advocacy Clinic (CAYAC) at the University of Washington School of Law made a

---

[7] The court cited the DSHS social worker's December 2010 declaration.

[8] The superior court's order on revision is also being stayed by order of this court until this appeal is decided.

7

limited appearance in support, while Delgado opposed the motion. The superior court denied the motion on March 2.[9]

Phillips and the CASA[10] appeal from the superior court's orders on revision and denying reconsideration.[11] Phillips also appeals from the court's denials of the request for a continuance and the motion to appoint counsel for M.C.D.P.

## DISCUSSION

### Order on Revision

We review the superior court's ruling, not the commissioner's. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004); State v. Hoffman, 115 Wn. App. 91, 101, 60 P.3d 1261 (2003). Commissioner rulings are subject to revision by the superior court. RCW 2.24.050. On revision, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner. In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). A superior court's placement decision in a dependency proceeding is reviewed for abuse of discretion. In re Dependency of A.C., 74 Wn. App. 271, 275, 873 P.2d 535 (1994). A court abuses its discretion when it "applies the wrong legal standard, or bases its ruling on an erroneous view of the law." Gildon v. Simon Prop. Group, Inc., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006).

---

[9] The court stated, "[A]fter consideration of the Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976) factors, the court determined that the child's rights were protected with the current representation and there was no need. . . ." CP at 1522.

[10] Only CASA Carol Moore filed the notice of appeal.

[11] Phillips and the CASA filed notices of appeal as well as notices of discretionary review regarding the challenged orders. Because this court has determined that discretionary review is warranted in any event, we need not decide whether the orders are appealable as of right.

The main issue is what standard applies to a motion for change of placement.[12] M.C.D.P.[13], Phillips, and the CASA contend the applicable standard is the "best interests of the child" standard set forth in In re the Dependency of J.B.S., 123 Wn.2d 1, 863 P.2d 1344 (1993). DSHS agrees with them on this issue. These parties contend the superior court erred as a matter of law by expressly refusing to consider M.C.D.P.'s best interests. Delgado contends that if there is an available and capable parent, the child's best interests are not considered. He relies primarily on the permanency plan, the goal of the dependency statute to reunite children with fit parents, and cases such as In re Welfare of A.B., 168 Wn.2d 908, 232 P.3d 1104 (2010).

In re J.B.S. involved an appeal from a superior court's refusal to reconsider a commissioner's order changing placement of a dependent child from his foster family to the custody of his father in Mexico. In re J.B.S., 123 Wn.2d at 3. The facts of In re J.B.S. are similar to those in this case. J.B.S. was a citizen of the United States born to an American mother and a Mexican father. Id. Initially, the father was not involved with J.B.S. and the child lived with his mother. When the mother was unable to care for J.B.S., he was found dependent under RCW 13.34.030 and placed with a foster family. Id. at 3-4. DSHS sought a relative as an alternative placement and located the

---

[12] It appears, based on the superior court's oral and written rulings, that the court may have viewed the matter before it as a motion to dismiss the dependency. For example, on reconsideration the court stated, "[T]his father has no further deficits, there is no reason for us to continue to have a dependency." Verbatim Report of Proceedings (VRP) 2/13/12 at 18. To the extent the superior court intended to dismiss the dependency, it erred. The motion before the commissioner was to change M.C.D.P.'s placement, not to dismiss the dependency. The dependency, which was established by agreement in May 2011, would have continued for at least six months following placement with Delgado. See RCW 13.34.138(2), RCW 13.34.145(7).

[13] M.C.D.P. is not officially an appellant, as she did not file a notice of appeal, but she is represented on appeal by Columbia Legal Services and the Children and Youth Advocacy Clinic at the University of Washington School of Law.

father, who agreed to the placement. Id. at 4-5. The father was deported but returned to Washington, completing classes, programs, and evaluations and visiting with J.B.S. regularly. He was again deported to Mexico. Id. at 5. DSHS filed a motion to change placement from the foster family to the father in Mexico. Id. at 5. At a hearing, the guardian ad litem (GAL) reported the foster parents were providing an exceptional home and J.B.S. was attached to his mother. The GAL expressed "grave concern about placing J.B.S. in a country whose language he did not speak, to live among virtual strangers." Id. at 5-6. The commissioner granted the motion. Id. at 6. The superior court upheld the decision on a motion to revise, finding that J.B.S. would suffer separation anxiety or trauma if placed in Mexico but concluding it could not make the placement determination according to the child's best interests. Id. at 6, 8.

The Washington Supreme Court reversed, finding that the superior court had erroneously failed to give J.B.S.'s interests "paramount consideration" and that its decision was "based on a fundamental misapprehension of its obligations under the [dependency] statute." Id. at 8. The court wrote:

> There is no support in the legislative scheme for the notion that a biological parent's rights must override a child's best interests in determining placement under the dependency statute. To the contrary, the pertinent statute, RCW 13.34.020, was amended in 1987 to expressly reflect the Legislature's concern to assure the child's interests be given due consideration, and prevail in case of conflict with the parents':
>> [T]he legislature declares that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized. *When the rights of basic nature, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, **the rights and safety** of the child should **prevail.*** The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter.

Id. at 8-9. The court, finding RCW 13.34.020 consistent with case law, noted it had "repeatedly held that the child's 'best interests' is the primary consideration in deciding a petition for modification of an order regarding custody of a dependent child." Id. at 10 (citations omitted). It observed, "The fact the child's interests should prevail does not mean the rights and interests of the natural parents have no weight, only that these rights are not paramount." Id. at 12. The court reversed and remanded for a review hearing pursuant to RCW 13.34.130(5). Id. at 8-10. This court, after In re J.B.S., has consistently cited and applied that case and the "best interests of the child" standard when considering matters of placement in dependency proceedings.[14]

Notwithstanding that In re J.B.S. specifically applies to a motion for change of placement, Delgado contends the superior court properly determined that where there is a capable and available parent, the best interests of the child are not considered. The standard on which he relies is the standard applicable to termination of parental rights decisions or to custody/visitation disputes between parents and nonparents. Under the termination cases he cites, an order terminating parental rights requires clear, cogent, and convincing evidence of the six elements under RCW 13.34.180(i)(a)-(f) and a finding of parental unfitness, and only once that is established does the court determine, by a preponderance of the evidence, whether

---

[14] See, e.g., Dep't of Soc. & Health Services v. Paulos, 166 Wn. App. 504, 517, 270 P.3d 607 (2012) (in determining placement in dependency proceeding, court's paramount duty is to protect best interests of child); In re Dependency of D.F.-M., 157 Wn. App. 179, 192-93, 236 P.3d 961 (2010), rev. denied, 170 Wn.2d 1026, 249 P.3d 181 (2011) (same); In re Dependency of R.W., 143 Wn. App. 219, 223-25, 177 P.3d 186 (2008) (parents' fundamental liberty and privacy interest in care and custody of children do not override children's best interests when determining placement during dependency); In re Dependency of J.S., 111 Wn. App. 796, 46 P.3d 273 (2002) (same); In re Dependency of A.C., 74 Wn. App. 271, 275-77, 873 P.2d 535 (1994) (error to construe RCW 13.34.130 as a matter of law to require placement with father without consideration of child's best interests).

termination is in the best interests of the child.[15] The cited custody cases support the proposition that a nonparent may interfere with a parent's rights to the care and custody of a child only after a showing that the parent is unfit or if custody with the parent would result in actual detriment to the child.[16] In such cases, the "best interests of the child" is a constitutionally insufficient basis for seeking visitation or custody. But none of these termination or custody cases involves placement decisions in a dependency, and none purports to overrule or modify J.B.S. Termination proceedings and custody (or visitation) disputes between parents and non-parents—neither of which was involved here—present different issues and have different ramifications from a placement decision in a case where dependency has been established.

---

[15] See In re Dependency of K.N.J., 171 Wn.2d 568, 257 P.3d 522 (2011) (only if parental unfitness shown by satisfying six statutory requirements may court determine if termination is in best interest of child); In re Welfare of A.B., 168 Wn.2d 908, 918, 232 P.3d 1104 (2010) (parent has due process right not to have parental rights terminated in absence of finding that he or she is currently unfit, and only once court has found unfitness may it consider child's best interests); In re H.W., 92 Wn. App. 420, 425, 961 P.2d 963 (1998) (parental rights can be terminated only if six statutory factors are established and termination is in the best interests of child).

[16] See In re Custody of Smith, 137 Wn.2d 1, 9, 969 P.2d 21 (1998) (striking down, in cases involving efforts by non-parents to seek visitation over parents' objections, statutes authorizing visitation rights "for any person when visitation may serve the best interest of the child"; State may interfere with family autonomy only where parent is unfit, a child has been harmed, or there is a threat of harm), aff'd sub nom Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); In re Parentage of C.A.M.A., 154 Wn.2d 52, 109 P.3d 405 (2005) (striking down, in case where grandparents petitioned for visitation over father's objection, statute providing that visitation with grandparent is presumed in child's best interests; statute "directly contravenes the constitutionally required presumption that the fit parent acts in the child's best interests" and employed a "best interests" standard, which could not apply when interfering with a non-deficient parent); and In re Custody of Shields, 157 Wn.2d 126, 128, 136 P.3d 117 (2006) (holding court may award custody of child to nonparent in proceeding against parent only if parent is unfit or if placement with parent would result in actual detriment to child; trial court thus erred in applying "best interests of the child" standard); In re Custody of E.A.T.W., 168 Wn.2d 335, 338, 227 P.3d 1284 (2010) (holding that under RCW 26.10.032, court must deny hearing on motion for third party custody unless nonparent sets forth facts showing adequate cause that parent is unfit or that placing child with parent would result in actual detriment to child's growth and development); In re Custody of C.C.M., 149 Wn. App. 184, 191, 202 P.3d 971 (2009) (holding, in action by nonparent for foster care placement under Indian Child Welfare Act, that party seeking to remove child from parent must show by clear and convincing evidence that parent's continued custody is likely to result in serious physical or emotional harm to child).

Delgado also cites certain provisions in chapter 13.34 RCW.[17] While these statutes support reunification with him generally, given that the permanency planning goal was to return M.C.D.P. to a parent, they do not mandate placement with him if it would be contrary to M.C.D.P.'s best interests.

Having determined that In re J.B.S. sets forth the standard applicable to placement motions, the next question is whether the superior court applied the wrong legal standard. We conclude it did. The court found that there was a capable and available parent and expressly declined, as in In re J.B.S., to consider M.C.D.P.'s best interests. It focused on the triggering event for the dependency (Delgado's inability to take M.C.D.P. upon deportation due to passport and name issues), found those issues had been remedied, and appears to have dismissed the dependency.

Application of the wrong legal standard can be harmless error only where it can be said "with confidence" that "the trial court's erroneous view of the law did not affect its view of the evidence." Backlund v. Univ. of Wash, 137 Wn.2d 651, 671, 975 P.2d 950 (1999). In In re A.C., this court held that while the trial court erred in construing RCW 13.34.130 as a matter of law to require placement with an available parent without consideration of the child's best interests, reversal of the disposition order placing the child with the father was not required because (1) the trial court did not, unlike in In re J.B.S., expressly state that it could not consider the child's best interests but instead acknowledged that the child's best interests were a factor; (2) there was no evidence, as in J.B.S., that the change of placement would be harmful

---

[17] See RCW 13.34.145(1)(c) ("Permanency planning goals should be achieved at the earliest possible date, preferably before the child has been in out-of-home care for fifteen months."), RCW 13.34.136(1) ("The permanency planning process shall include reasonable efforts to return the child to the parent's home"), RCW 13.34.136(3) ("Permanency planning goals should be achieved at the earliest possible date.").

13

to the child; (3) the decision did not involve, as in In re J.B.S., a drastic change that would effectively sever the child from contacts with his mother and foster family; and (4) the passage of time prevented any meaningful attempt to restore the circumstances existing prior to the placement decision. In re A.C., 74 Wn. App. at 279-80.

Here, we cannot say the superior court's error was harmless. In re J.B.S. holds that the best interests of the child prevail over the rights of the parent when there is a conflict between a child's rights to basic nurture, health, or safety and the parent's rights to the care and custody of a child. In re J.B.S., 123 Wn.2d at 9-11. The question is whether there was evidence that M.C.D.P.'s rights may have conflicted with Delgado's and evidence that placement with him was not in her best interests. We observe there was such evidence before the commissioner, who found that it would be "detrimental" to grant the placement motion at that time, and then before the superior court. The CASAs and DSHS submitted evidence that M.C.D.P. was suffering from mental health issues, anxiety, and learning disabilities and could not speak Spanish. They argued Delgado had not shown he could meet her needs in these areas. They also submitted evidence that M.C.D.P. was strongly attached to her maternal and foster families, and argued an attachment assessment was necessary to assess the effects of a move on her psychological well-being. Delgado does not argue that the superior court made the correct decision under the "best interests of the child" standard. And, assuming for purposes of argument that

Delgado's parental fitness was established, he cites no authority for the proposition that placement with a capable parent is necessarily in the best interests of the child.[18]

We reverse the superior court's order on revision and remand.[19]

### Request for Continuance

The denial of a continuance is reviewed for abuse of discretion. In re Dependency of V.R.R. and H.R., 134 Wn. App. 573, 580-81, 141 P.3d 85 (2006). The appellant must make a clear showing that the court's exercise of discretion was manifestly unreasonable, exercised on untenable grounds, or made for untenable reasons. State v. Downing, 151 Wn.2d 265, 273-74, 87 P.3d 1169 (2004).

The superior court did not abuse its discretion. The CASAs requested a continuance at the February 13, 2012 hearing so that Solchany's report could be considered as evidence on reconsideration. But RCW 2.24.050 limits the superior

---

[18] The parties dispute whether Delgado suffers from parental deficiencies and contend the record supports their respective positions. M.C.D.P., Phillips, and the CASA contend he suffers from unaddressed alcohol-abuse and psychological issues, among other things, while Delgado contends his only deficiency was his inability to take M.C.D.P. with him upon deportation. We note that at the hearing on reconsideration of the revision order DSHS conceded it "cannot say that this father is not a capable parent." VRP 2/13/12 at 13. Neither the commissioner nor the superior court made any specific findings as to alcohol issues or other issues identified in the dependency order (for example, disputed findings regarding M.C.D.P. being left with babysitters or looking unkempt). The superior court did state that "[n]either the Department nor CASA cite any credible evidence that the father's ability to parent this child changed once he was in Mexico." CP at 1231. But it is unclear whether it intended this finding to resolve the concerns about alcohol use and other issues. In any event, the dispute over whether Delgado's parental fitness has been established is largely irrelevant to the issue on appeal. Even assuming it has, the superior court was required to consider evidence relevant to M.C.D.P.'s rights and best interests.

[19] The J.B.S. court provided a non-exclusive list of considerations for the trial court in that case to evaluate should DSHS file a new motion for a change of placement: (1) the psychological and emotional bonds between the child and the child's (a) parent not being considered for placement, (b) siblings, and (c) foster family; (2) the potential harm from effectively severing contact with these individuals; (3) the effect of placement in a foreign country on the court's ability to oversee placement; (4) the nature of the child's attachment to the parent being considered for placement; (5) the history and present circumstances of the parent being considered for placement; (6) the home available in the foreign country; and (7) the potential effect on the child of an abrupt change in environment. Moreover, the court identified concerns by the GAL or CASA and a parent's immigration status as proper considerations. In re J.B.S., 123 Wn.2d at 11-12. On remand, some or all of these considerations may be relevant in M.C.D.P.'s case.

court's review to the record of the case and the findings of fact and conclusions of law entered by the court commissioner. See also In re Moody, 137 Wn.2d at 992-93 ("Generally, a superior court judge's review of a court commissioner's ruling, pursuant to a motion for revision, is limited to the evidence and issues presented to the commissioner."). Solchany's report, dated February 3, 2012, was not before the commissioner. It was not an abuse of discretion to deny the continuance given the reason it was sought by the CASAs.[20]

### Motion to Appoint Independent Counsel

M.C.D.P. and Phillips contend the superior court erred in denying Phillips' request for independent counsel for M.C.D.P. under RCW 13.34.100 and the 14th Amendment to the United States Constitution.[21] In support, various amici curiae argue that providing children a constitutional right to counsel in dependency matters is consistent with national trends and best practices, and is supported by state and federal constitutional law. DSHS and Delgado contend the court did not err, and the CASA takes no position.

---

[20] Similarly, the superior court did not err in refusing to consider Solchany's report as part of the motion for reconsideration, as M.C.D.P. contends.

[21] M.C.D.P. and Phillips also contend the state due process clause, article I, section 3, provides greater protection than the 14th Amendment for the right to independent counsel for all children in dependency proceedings. In other words, they contend RCW 13.34.100 violates Article I, section 3. See Bellevue Sch. Dist. v. E.S., 171 Wn.2d 695, 702-04, 257 P.3d 570 (2011) (where statute made counsel for juvenile at initial truancy hearing discretionary, juvenile's claim that article I, section 3 offered broader protection than federal counterpart and required appointment of counsel would require court to hold statute is unconstitutional). We decline to review this claim because it was not raised below. RAP 2.5(a). M.C.D.P. asserts the argument was raised by the attorney from CAYAC, noting counsel's request in briefing "that the court appoint counsel pursuant to RCW 13.34.100 and the constitutions of the United States and the State of Washington" and statement at oral argument that "appointment of counsel in this case is required as a matter of procedural due process under the 14th Amendment of the U.S. Constitution and under the Washington State Constitution." CP at 1372; VRP 3/2/12 at 7. These arguments made no distinction between state and federal due process and did not address Gunwall.

In actions under chapter 13.34 RCW, a trial court may, but is not required to, appoint counsel for children twelve years or older if they request counsel. RCW 13.34.100(6)(f).[22] The court may appoint counsel for younger children if the GAL or the court determines that the child needs to be independently represented by counsel. Id. Where RCW 13.34.100 makes appointment of counsel for children in dependency proceedings discretionary, we will review the superior court's decision for abuse of discretion.

RCW 13.34.100 does not specify any criteria in determining whether to appoint counsel. The Washington Supreme Court recently held that the decision to appoint counsel for a child in a termination of parental rights proceeding should be examined on a case-by-case basis using the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In re Dependency of M.S.R., 174 Wn.2d 1, 21-22, 271 P.3d 234 (2012), reconsideration denied (May 9, 2012). The court explained:

> [T]he due process right of children who are subjects of dependency or termination proceedings to counsel is not universal. The constitutional protections, RCW 13.34.100(6), and our court rules give trial judges the discretion to decide whether to appoint counsel to children who are subjects of dependency or termination proceedings.

Id. at 22. The court later amended its opinion to state, "We recognize that this is an appeal of a termination order. Nothing in this opinion should be read to foreclose argument that a different analysis would be appropriate during the depende[n]cy stages." Id. at 22 n.13, as corrected (May 8, 2012).

---

[22] A GAL shall be appointed for all children unless there is good cause. RCW 13.34.100(1).

In re M.S.R. was decided one day before the March 2, 2012 hearing on the request for independent counsel for M.C.D.P. The superior court was alerted to the decision at the hearing and cited Mathews in its ruling. The amendment to In re M.S.R. was not added until May 8, 2012. At the time of the superior court's decision, therefore, it reasonably believed In re M.S.R./Mathews applied. The parties do not dispute that the court acted appropriately in applying Mathews.[23] Therefore, we assume without deciding that Mathews applies in reviewing the superior court's ruling.[24]

Mathews requires the weighing of (1) the private interest at stake; (2) the risk of error involved under the current procedures and the probable benefits of additional or substitute procedural protections; and (3) the government's interest in the proceeding, including fiscal and administrative burdens.[25] Mathews, 424 U.S. at 335.

---

[23] Nor do M.C.D.P. and Phillips argue that the federal due process clause provides greater protection of the right to counsel than what is required under RCW 13.34.100.

[24] We decline to announce, for the first time, a more lenient test for appointing counsel for children in dependencies than for those in termination proceedings. Phillips and M.C.D.P. suggest that because In re M.S.R. noted that its decision did not foreclose argument that a different standard might apply to counsel for children in dependency proceedings, a different standard should apply. But they do not suggest what the test might be or provide adequate briefing on why a more lenient test is merited other than to argue that all dependent children should receive counsel. Furthermore, In re M.S.R.'s statement that a different standard might apply in dependencies could mean that a more stringent standard might apply.
  As to the argument that the 14th Amendment/Mathews require the appointment of counsel for all dependent children, M.C.D.P. and Phillips do not explain how this court could make such a holding consistent with In re M.S.R. Termination proceedings begin as dependency proceedings. What they seek would lead to the result that, in cases where termination is initiated, courts would have to determine whether to permit mandated dependency counsel to continue to represent the child (thus, a child's attorney might be taken away). This is impractical and problematic.

[25] M.C.D.P. contends the lack of specific findings by the superior court as to the Mathews factors is alone a basis for reversal, citing Hardee v. State, Dep't of Soc. and Health Serv's., 172 Wn.2d 1, 15-17, 256 P.3d 339 (2011). In Hardee, the court overruled Ongom v. Dep't of Health, 159 Wn.2d 132, 148 P.3d 1029 (2006) because that court misapplied the first and third Mathews factors and failed to apply the second. Hardee does not stand for the proposition that a trial court must be reversed where it does not develop each factor on the record. Ongom was reversed after the court was determined to have misapplied two of the factors.

As to the first factor, M.C.D.P.'s physical liberty and fundamental liberty interests in the dependency proceedings generally were significant.[26] However, at the time Phillips brought the motion for appointment of counsel, the superior court had already made its placement ruling, ordered that M.C.D.P. be placed with Delgado, and denied the motion for reconsideration.[27] Therefore, M.C.D.P.'s private interest at stake at that time did not include the placement decision. Furthermore, a placement decision can be changed. To the extent separate counsel for M.C.D.P. might be beneficial in the future if problems arose with placement and with overseeing the remainder of the dependency, a request for counsel could be made at that time.[28]

The second factor is the risk of erroneous deprivation and the value of the additional procedural protections sought. In re M.S.R., 174 Wn.2d at 18. Relevant considerations include the legal and factual complexity of the case and whether there is already someone who can adequately represent the child's interests or whose interests are aligned with the child's. Id. M.C.D.P. and Phillips contend this factor weighs in favor of appointment of counsel given (1) the complexity of the international law and citizenship issues; (2) the heightened risk of error under the subjective "best interests of the child" standard and the "preponderance of the evidence" burden of

---

[26] M.C.D.P. cites, among other things, the court's discussion in In re M.S.R., 174 Wn.2d at 15-17, of the substantial risks faced by children in dependency and termination proceedings; the possibility of being removed to another country; being denied the liberty to associate with her family in the United States; her rights in her own safety; and the possibility that a dependency court could make decisions about her life for years.

[27] We reject the assertion by Phillips and M.C.D.P. that the superior court was required to appoint counsel sua sponte at an earlier time. They make no persuasive argument in this regard and do not explain how appointment of counsel would have altered the result reached by the superior court.

[28] By the time the superior court made its decision on appointing counsel, Phillips had filed a notice of appeal as to its order on revision. Enforcement of the placement decision was stayed pending the appeal. It is unclear whether there were other decisions before the superior court that could be affected by M.C.D.P.'s having counsel.

proof; (3) that GALs and CASAs cannot fulfill the function of an attorney[29]; and (4) that no other party could adequately represent M.C.D.P's interests. DSHS responds that there has been no shortage of advocacy for M.C.D.P.'s position regarding being placed with Delgado in Mexico, noting that the CASAs, Phillips, and DSHS—all represented by attorneys—provided case law and materials as to why she should not be placed in Mexico at that time. It notes the superior court rejected their arguments and contends there was no reason to think an additional attorney would have changed its ruling. We agree with DSHS. Again, we note the motion was not brought until after the superior court made its decision on revision and reconsideration, and thus the risk of erroneous deprivation related to that decision was not at issue at the time. Timing aside, we conclude the superior court did not abuse its discretion in finding that, in the case before it, M.C.D.P.'s interests were being adequately represented by the CASAs and their attorney. The CASAs, through an attorney at all times,[30] had been advocating strenuously for M.C.D.P.'s desire to stay in the United States with her foster family. M.C.D.P. and Phillips note that the CASAs and M.C.D.P. might not agree on visitation matters or regarding an ongoing relationship with Delgado, but at the time of the motion it was not clear these issues were ripe to be dealt with or that there was in fact a difference in M.C.D.P.'s position and that of the CASAs.

---

[29] The appellants note GALs and CASAs are not trained to protect a child's legal rights and are obligated to represent what they consider the child's best interests, whereas an attorney can represent the child's expressed desires. They note that here, the CASA and M.C.D.P. do not necessarily agree on the amount, location, or timing of visitation or the nature of an ongoing relationship. They also note that lawyers maintain confidentiality with their clients and explain to the child the proceedings and the child's rights.

[30] The CASAs have been represented by an attorney throughout the proceedings. The initial guardian ad litem, April Rivera, is an attorney.

The third factor is the government's interest in the proceeding, including fiscal and administrative burdens. The State "has a compelling interest in both the welfare of the child and in 'an accurate and just decision' in the dependency and termination proceedings." In re M.S.R., 174 Wn.2d at 18. Here, DSHS did not oppose the motion to appoint counsel for M.C.D.P. On appeal, DSHS notes that it has an economic interest in preventing separate expenditures for an attorney when the attorney will primarily be duplicating work done by the CASA and the CASA's attorney. M.C.D.P. points to a study indicating that providing counsel to children in dependencies generally might reduce the long-term financial burden on the state. This factor does not weigh more heavily in either direction. In sum, the superior court did not abuse its discretion in deciding that counsel was not necessary at that time.[31]

Reverse and remand superior court's order on revision. Otherwise affirm.

WE CONCUR:

_Spearman, A.C.J._

_Schindler, J._

_Cox, J._

---

[31] M.C.D.P. sought appointment of counsel on appeal, which she received. We express no opinion as to whether, on remand, the appointment of counsel for M.C.D.P. may be appropriate or necessary.