2014 JUL 21 AM 11:38
COURT OF APPEALS DIV 1

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of<br>K.C. (d/o/b 05/26/03),<br>J.C. (d/o/b 01/20/06),<br>J.S. (d/o/b 12/23/08),<br><br>STATE OF WASHINGTON,<br><br>               Respondent,<br><br>           v.<br><br>NICOLE CADIENTE,<br><br>              Appellant. | No. 70865-1-I<br>(consolidated w/70866-0-I & 70867-8-I)<br><br>DIVISION ONE<br><br><br><br><br>UNPUBLISHED OPINION<br><br>FILED: July 21, 2014 |

BECKER, J. — This is an appeal from orders finding Nicole Cadiente's three children dependent and removing them from her care. We affirm. Despite receiving numerous services and attending classes designed to help her learn how to protect her children from abusers, Cadiente began and maintained a relationship with a convicted sex offender. The orders are supported by substantial evidence that she did not recognize the danger and was not capable of protecting the children.

Nicole Cadiente, an enrolled member of the Lummi Nation, is the mother of the three children involved in this dependency action: K.C. (born 5/26/03), J.C.

(born 1/20/06), and J.S. (born 12/23/08). All three children are Indian children as defined by the Indian Child Welfare Act of 1978.

Cadiente's children were the subject of a previous dependency action that was filed by the State Department of Social and Health Services in Whatcom County Superior Court in 2010. The Department alleged that Cadiente was not protecting her children from her abusive then-husband. As part of that dependency action, Cadiente received a number of services from the Department to help her protect her children. She attended parenting classes. One class called "Darkness to Light" was specifically targeted at helping Cadiente learn how to protect her children from sex offenders.

In November 2012, the dependency action was dismissed as to the oldest child. On January 14, 2013, the dependency action was dismissed as to the two younger children. At the time that action was dismissed, the Department and the court were unaware that in October 2012, Cadiente had begun a relationship with convicted child molester Lee "Fiji" Solomon, a registered sex offender.

In March 2013, the Department received two referrals regarding the Cadiente children. On March 20, 2013, the Department received notice that the oldest child had been left unsupervised in the parking lot of Cadiente's apartment complex and had rubbed his penis against the back of a girl's neck. On March 23, 2013, the Department received notice that Cadiente had allowed the children to have unsupervised contact with Solomon.

Department social workers Ryan Douglas and Joe Jacob investigated. J.C. told Douglas that her mother was engaged to "Fiji" and referred to him as

"daddy." Douglas testified that J.C. appeared to "have a connection" with Solomon. K.C. likewise referred to Solomon as "daddy." Douglas and Jacob spoke to a neighbor who reported that Solomon occasionally spent the night at Cadiente's residence. A bus driver told them that Solomon sometimes appeared to be the only adult home when the children were dropped off and picked up. A Lummi Nation police officer told Douglas he saw Cadiente, her children, and Solomon together at the Ferndale Cost Cutter on March 12, 2013.

On March 28, 2013, the Department filed the present dependency petition. Cadiente contested it.

On June 10, 2013, Solomon's parole officer, Tyler Muise, made an unannounced visit to Solomon's residence. He testified that when Solomon opened the door to his one-room trailer, he saw Cadiente lying under the covers in the trailer's only bed. The covers next to her were pulled back. Officer Muise stated that it was apparent to him that Solomon had been in the bed prior to getting up to open the door for him.

In July and August 2013, the court held a fact-finding hearing. The trial court made the following findings of fact and conclusions of law:

- Cadiente allowed a relationship to form between her children and Lee Fiji Solomon. This relationship was so significant that some, if not all, of her children referred to him as "daddy."
- Cadiente continued in her relationship with Solomon until at least July. It is unclear if the relationship has ever ended. Cadiente lied to the court when she testified that she ended her relationship with Solomon in April.
- Cadiente's relationship with Solomon is particularly troubling in light of her previous long-term dependency. Pursuant to that dependency, Cadiente received a significant amount of training and education in how to protect her children. This included a class on how to protect her children from sex offenders. Before

3

that dependency concluded, she began a relationship with a man who had been convicted of molesting a child.

* Cadiente does not comprehend the risk Solomon poses to her children. This clearly demonstrates that she is not capable of adequately caring for her children.

The court found that all three children were dependent.

On September 3, 2013, the disposition hearing was held. The court ordered the children removed from Cadiente's care. This appeal followed.

## FINDING OF DEPENDENCY

Cadiente assigns error to the finding of dependency.

To declare a child dependent, a court must find by a preponderance of the evidence that the child meets one of the statutory definitions of dependency. RCW 13.34.110; In re Welfare of Key, 119 Wn.2d 600, 612, 836 P.2d 200 (1992), cert. denied, 507 U.S. 927 (1993). In this case, the children were found dependent as that term is defined in RCW 13.34.030(6)(c): a child is dependent where the child "has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."

We will affirm an order of dependency so long as substantial evidence supports the court's findings of fact and the findings support the conclusions of law. In re Dependency of M.S.D., 144 Wn. App. 468, 478, 182 P.3d 978 (2008). Evidence is substantial if, when viewed in the light most favorable to the party prevailing below, a rational trier of fact could find the fact more likely than not to be true. In re Dependency of M.S.D., 144 Wn. App. at 478.

4

The trial court found Cadiente was not capable of adequately caring for the children. In the trial court's view, Cadiente's actions did not reflect an understanding that it was dangerous to have Solomon around them. Cadiente argues that the testimony did not establish that her relationship with Solomon endangered the children. She contends that at most, it supported only a finding that the romantic partner she selected was not ideal.

A parent's choice to partner with an individual who has a criminal history is, in itself, insufficient to support a finding of dependency. M.S.D., 144 Wn. App. at 482. In M.S.D., the Department filed a dependency petition when it discovered that the mother's boyfriend had a 10-year-old conviction for assault and criminal mistreatment of his 2-month-old baby. The Department argued that the conviction was, by itself, sufficient to establish that he posed a danger to M.S.D. This court reversed, finding that substantial evidence did not support the finding of dependency:

> If the dependency trial had taken place in 1999 or 2000, when M.S.D. was an infant, the significance of Poirier's criminal conviction of assault of a child and the scope of the danger to M.S.D. would weigh heavily in favor of finding a clear and present danger to M.S.D. But at the time of the dependency trial in 2006, Poirier had lived with M.S.D. for several years and there was no evidence that he ever physically abused her or any other child during that period. DSHS also presented no evidence showing that someone who has assaulted an infant approximately 10 years earlier was likely to assault a 7-year-old child. Nor was there any evidence that the risk posed by the prior conviction does not diminish with age and maturity or that Poirier was unable to change.

M.S.D., 144 Wn. App. at 481-82.

This case is not like M.S.D. The evidence established that Solomon was convicted of molesting a 13-year-old female child in 2008 or 2009. Cadiente's children were 10, 7, and 4 in 2013 at the time of the fact-finding hearing. An expert testified that Solomon was at high risk of reoffending, especially in light of his willingness to have contact with minor children in violation of the conditions of his parole.

Unlike the boyfriend's conviction in M.S.D., Solomon's relatively recent conviction for molesting a child just a few years older than Cadiente's children weighs heavily in support of the trial court's determination that Cadiente's relationship with Solomon endangered her children. And the dependency is further supported by the evidence that Cadiente was untruthful about her relationship with Solomon and was disregarding the information she had been provided in the previous dependency. The Department's brief accurately summarizes the case:

> Ms. Cadiente entered into a relationship with an admitted, convicted sex offender who had offended against young girls, minimized the offense, and untruthfully testified she terminated their relationship in April 2013, two months before Mr. Solomon's probation officer discovered them sleeping together. Ms. Cadiente's inability to comprehend the risk to her children, despite receiving services directly addressing this issue, provides substantial evidence supporting the trial court's findings of dependency.

We too conclude that substantial evidence supports the findings of dependency.

REMOVAL OF CHILDREN FROM THE HOME

Cadiente also assigns error to the order removing her children from her care.

We review dispositional decisions for abuse of discretion. In re Dependency of A.C., 74 Wn. App. 271, 873 P.2d 535 (1994). A trial court abuses its discretion if its ruling is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A court's decision is manifestly unreasonable if it is outside the range of acceptable choices. In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

To remove a dependent child, the court must find (a) there is no parent or guardian available to care for the child; (b) the parent, guardian, or legal custodian is not willing to take custody of the child; or (c) that, by clear, cogent, and convincing evidence, a manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed from the home. RCW 13.34.130(5). Here, the trial court found out-of-home placement was appropriate both because Cadiente was not available to care for the children and because there was a manifest danger of serious abuse or neglect. Cadiente argues that substantial evidence supported neither basis.

First, she contends there was no reason to conclude she was not available to care for her children. Cadiente believes being unavailable requires a showing that she abandoned her children, was incarcerated, or was otherwise physically absent. We disagree. A mother who fails to perceive that she is

7

putting her children at risk by giving a sex offender access to the home is not "available" to be the protector and guardian children are entitled to have. The trial court appropriately concluded Cadiente was not available in the statutory sense of that term.

Again citing M.S.D., Cadiente also argues that her relationship with Solomon was insufficient to constitute manifest danger of abuse or neglect. Again, we disagree. Cadiente's argument depends on having this court accept as true her own testimony that she ended her relationship with Solomon as soon as she found out that staying away from children was a condition of his parole. The trial court was entitled to, and did, believe contrary testimony indicating that she maintained the relationship, allowed Solomon to stay in her home, and refused to accept that his conviction as a sex offender was anything more than a technicality.

Where the Department seeks removal of an Indian child, the court must also find that "active efforts" were made to prevent the breakup of an Indian family. RCW 13.38.130(1). At a minimum, "active efforts" shall include:

> a showing to the court that the department or supervising agency social workers actively worked with the parent, parents, or Indian custodian to engage them in remedial services and rehabilitation programs to prevent the breakup of the family beyond simply providing referrals to such services.

RCW 13.38.040(1)(a)(i).

Cadiente alleges the Department did nothing to engage her in remedial services and rehabilitation programs beyond merely referring her to such services. She does not count the numerous services the Department involved

her in during the course of the first dependency proceeding to help her identify and protect against individuals who would pose a risk to her children. Several witnesses, including a Lummi Nation social worker, testified that there were no other services likely to correct Cadiente's parenting deficiencies. The services the Department made available and Cadiente accepted included mental health counseling for herself, therapy for her and her children, assorted parenting classes, and the class where she specifically learned about sex offenders. Notwithstanding these active efforts to prevent the breakup of the family, Cadiente began and has maintained a relationship with a sex offender.

The trial court did not abuse its discretion when it found that the Department made active efforts to prevent the breakup of an Indian family and its efforts were unsuccessful.

To order an Indian child's removal, the court must also find that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child:

> No involuntary foster care placement may be ordered in a child custody proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the *continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.* For purposes of this subsection, any harm that may result from interfering with the bond or attachment between the foster parent and the child shall not be the sole basis or primary reason for continuing the child in foster care.

RCW 13.38.130(2) (emphasis added). For the reasons discussed above with respect to Cadiente's relationship with Solomon, we conclude the decision to remove the children complied with this section.

9

VISITATION

In the shelter care orders entered on March 28, 2013, at the beginning of the dependency proceeding, the children were taken into Department custody. The court ordered at that time that Cadiente would be allowed a total of four hours supervised visitation with the children per week. Supervision for one two-hour visit per week was provided by the Department. Supervision for the other two-hour visit per week was supervised by Cadiente's mother, Barbara Cadiente.

In disposition orders entered on September 3, 2013, the two younger children were placed with Barbara Cadiente. The parties agreed that it would be inappropriate to have her continue as a visitation supervisor at the same time she was the caregiver. The court ordered that the two-hour weekly visit supervised by the Department would continue. The court stated that the second two-hour weekly visit could continue if the parties found an acceptable supervisor.

Cadiente contends the disposition order imposed an inappropriate limitation on her visitation. "Visitation may be limited or denied only if the court determines that such limitation or denial is necessary to protect the child's health, safety, or welfare." RCW 13.34.136(2)(b)(ii)(C). Cadiente has failed to show that her visitation was limited. All parties agreed that four hours of visitation would be good for the children. The amount of visitation permitted by the court remained unchanged from the time of the shelter care order.

Cadiente appears to be arguing that the Department has a mandatory duty to provide and pay for a supervisor for the second two-hour visit. She does not identify the source of such a duty. The statute she cites, RCW

13.34.136(2)(b)(ii)(D), merely states that the court and the Department "should rely upon community resources, relatives, foster parents, and other appropriate persons to provide transportation and supervision to the extent that such resources are available, and appropriate, and the child's safety would not be compromised." The order complied with this statute. We find no abuse of discretion.

## URINALYSIS

The dispositional order included a requirement, requested by the Department, that Cadiente complete urinalysis testing if requested by the social worker "with reasonable suspicion of use. Any missed or diluted UAs [urinalyses] shall be considered dirty by the Department." Cadiente objected to this requirement at the hearing and renews her objection on appeal. She contends a urinalysis requirement is inappropriate given the absence of evidence that she used intoxicating substances.

In supervising a dependency, the court may order services to correct parental deficiencies and restore the family, keeping in mind that the number of contacts the client is required to make should be minimized to the extent possible:

> The department and supervising agencies shall develop methods for coordination of services to parents and children in child dependency cases. To the maximum extent possible under current funding levels, the department and supervising agencies must:
> . . . .
> (b) Develop treatment plans for the individual needs of the client in a manner that minimizes the number of contacts the client is required to make.

RCW 13.34.025(1)(b).

Defending the urinalysis requirement, the Department characterizes it as "a focused, specific, and understandable court-ordered service" that would not be burdensome since it would only be requested if the social worker had a reasonable suspicion that Cadiente was using drugs or alcohol.

At no point during the proceedings did the Department present evidence that Cadiente had a history of using drugs or alcohol. Under these circumstances, there is no basis at this time for putting Cadiente under this additional restriction. The dispositional orders are remanded to have the urinalysis provision stricken.

With the exception of the requirement for urinalysis testing, the orders of dependency and disposition are affirmed.

WE CONCUR:

12