[No. 31476-9-I.    Division One.    April 11, 1994.]

*In the Matter of the Dependency of* A.C.

LINDA CRAVEN, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*Timothy Sell* of *The Public Defender Association*, for appellant.

*Christine O. Gregoire, Attorney General,* and *Stephen H. Hassett, Assistant,* for respondent.

*David James Russell, Ron S. Heiman,* and *Stephen Mueller,* as guardians ad litem.

PER CURIAM. — Linda Craven appeals from a disposition order in a dependency proceeding that placed her daughter, A.C., with A.C.'s father, Michael Riley. A commissioner referred the appeal to a panel of judges for accelerated review pursuant to RAP 18.12. Based on the recent decision in *In re J.B.S.*, 123 Wn.2d 1, 863 P.2d 1344 (1993), we agree with Craven that the trial court erred in several respects, but we affirm the decision because any error was harmless.

The relevant facts are undisputed. Craven is the mother of A.C., born in August 1990. In December 1990, Craven was charged with two counts of second degree assault. The charges were based on extensive injuries suffered by C.R., the 18-month-old son of Michael Riley. These injuries included loop marks, arm fractures, burn marks, and numerous bruises. At the time, Craven was living with Michael Riley and was C.R.'s caretaker.[1]

Craven was released pending trial on the condition that A.C. be placed in another family. Thereafter, A.C. lived with family friends during the week and with her maternal grandmother on the weekend; Craven was permitted contact only under adult supervision. In August 1991, a jury found Craven guilty of one count of second degree assault on C.R. In November 1991, she was sentenced to 5 months in jail. The sentence was stayed pending appeal, and the sentencing court lifted the conditions on Craven's contact with A.C.

On November 26, 1991, a dependency petition was filed, alleging that A.C. had "no parent . . . capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development". *See* former

---

[1]The facts are set forth in detail in this court's decision affirming Craven's conviction. *See State v. Craven*, 69 Wn. App. 581, 849 P.2d 681, *review denied*, 122 Wn.2d 1019 (1993).

RCW 13.34.030(2)(c). The petition was based in part on Craven's conviction and on her continued denial that she had caused C.R.'s injuries. On December 4, 1991, a shelter care order was entered, placing A.C. with her maternal grandmother and authorizing Craven to live in the same house. The order required that Craven's contact with A.C. be supervised by an adult at all times. The juvenile court reaffirmed the placement conditions at subsequent shelter care hearings on January 6, 1992, and June 16, 1992.

On August 11, 1992, Craven and Riley entered into separate agreed orders of dependency which provided that A.C. was dependent pursuant to former RCW 13.34.030(2)(c). A.C.'s placement with the maternal grandmother was continued under the same conditions as applied to the shelter care orders. Riley noted his intention to challenge A.C.'s placement at the disposition hearing. The issue of custody was pending in a separate proceeding in family court.

At the disposition hearing, the trial court limited testimony to the issue of Riley's suitability for placement. Paul Heath, the Child Protective Services social worker, testified that he had no concerns about Riley's ability to care for A.C. Riley testified about his plans for caring for two children. Lori Sigurdson, the guardian ad litem and court appointed special advocate in the family court proceeding, testified that A.C. and C.R. interacted well together and that A.C. was "well bonded" with both of her parents. She recommended that A.C. be placed with Riley because of Craven's conviction and stated that she was "comfortable" with that placement.

Craven did not seriously dispute Riley's ability to care for A.C., but maintained that the central issue was whether a change of placement was in A.C.'s best interests. She argued that despite the legal conditions imposed upon her, she had been A.C.'s de facto full-time caregiver since birth and should therefore be considered as a "placement resource". The trial court rejected Craven's proposed evidence on A.C.'s current conditions of care and on whether a change of place-

ment would be in the child's best interests. The trial court found the proposed evidence irrelevant, ruling that RCW 13.34.130 required a finding that Riley was unsuitable before A.C. could be placed with someone other than a parent. Based on the provisions of RCW 13.34.130, the fact of Craven's conviction, the agreed order of dependency, and Riley's undisputed suitability, the trial court ordered that A.C. be placed with Riley.

Following extensive argument, the trial court denied Craven's motion for reconsideration on September 24, 1992. The disposition order entered on September 18, 1992, provided in pertinent part:

> As a matter of law Linda Craven's criminal conviction renders . . . her legally unavailable under RCW 13.34.130[(1)](b)(i) at the present time, inasmuch as her felony conviction for assault of a child of the same age requires the court to presume a RCW 13.34.130[(1)](b)[(iii)] finding.

Craven was permitted visitation, with full supervision by A.C.'s maternal grandmother, for two evenings per week and overnight visitation on alternate weekends. With the exception of the supervision requirement, the terms of visitation were the same as those previously accorded Riley. A.C. has apparently remained in placement with Riley since October 15, 1992.

Craven contends that the trial court erred by construing RCW 13.34.130 to require placement with Riley without giving paramount consideration to A.C.'s best interests. Craven further maintains that her due process rights were violated when the trial court precluded her from presenting evidence on her current suitability as a parent and on A.C.'s best interests.

A placement decision in a dependency proceeding is discretionary and will be overturned on appeal only upon a showing of an abuse of discretion. *In re Coverdell*, 39 Wn. App. 887, 895, 696 P.2d 1241, *review denied*, 102 Wn.2d 1009 (1984). The trial court here agreed with arguments put forth by Riley and the guardian ad litem and construed RCW 13.34.130(1)(b) to permit "out-of-home" placement with a

relative, such as Craven's maternal grandmother, only if there is no "parent . . . available to care for such child[.]" RCW 13.34.130(1)(b)(i).[2] Because Riley's suitability as a parent was undisputed and because Craven was "unavailable", the trial court reasoned, RCW 13.34.130 mandated placement with Riley.

We agree with Craven that the trial court erred to the extent that it construed RCW 13.34.130 as a matter of law to preclude continuing the existing placement with A.C.'s maternal grandmother and to require placement with Riley without consideration of A.C.'s best interests. *In re J.B.S.*, 123 Wn.2d 1, 863 P.2d 1344 (1993), decided after the trial court's ruling and after the parties' briefs were submitted, is controlling.

In *J.B.S.*, the Supreme Court reviewed a juvenile court order that changed placement of a dependent child from a foster family to the child's father in Mexico. The father had left home when J.B.S. was 2 months old. The mother, who was 15 when J.B.S. was born, cared for him until he was over a year old and then left him with a friend. J.B.S was eventually found dependent and placed in foster care. Subsequently, the mother indicated her desire that J.B.S. be adopted by the foster family.

---

[2]Former RCW 13.34.130 provides in pertinent part that following a determination of dependency, "the court shall enter an order of disposition pursuant to this section.

"(1) The court *shall* order one of the following dispositions of the case:

"(a) Order a disposition other than removal of the child from his or her home . . ..

"(b) Order that the child be removed from his or her home and ordered into the custody, control, and care of a relative or . . . Unless there is reasonable cause to believe that the safety or welfare of the child would be jeopardized or that efforts to reunite the parent and child will be hindered, such child shall be placed with a grandparent, brother, sister, . . . with whom the child has a relationship and is comfortable, and who is willing and available to care for the child. *An order for out-of-home placement may be made only if the court finds that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home and to make it possible for the child to return home* . . . and that:

"(i) There is no parent or guardian available to care for such child;

". . .

"(iii) A manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed from the home[.]" (Italics ours.)

At this point, believing that the dependency statute required placement with a blood relative, the Department of Social and Health Services (DSHS) contacted J.B.S.'s father, who was incarcerated on a conviction for possession and delivery of cocaine. The father indicated a desire to form a "bond" with J.B.S., but shortly thereafter was deported to Mexico. The father illegally returned for a dependency review hearing, participated in services for several months, and was then deported again.

DSHS moved to change placement from the foster family to the father in Mexico. At the hearing, the evidence indicated that the mother, who now wanted J.B.S. back, was participating in required services, that the foster family was providing a good home, and that J.B.S. was very attached to his mother and would be traumatized if required to live with his father in Mexico. The juvenile court found that the mother was not capable of caring for the child "at this time" and ordered J.B.S. placed with the father in Mexico. The Superior Court affirmed the decision, concluding that it was precluded by statute from making the placement determination according to the child's best interests. *J.B.S.*, 123 Wn.2d at 6.

Upon further review, the Supreme Court reversed, holding that the placement decision rested on a "fundamental misapprehension" of the court's obligations under RCW 13.34 and that the child's best interest is the paramount concern in placement decisions:

> [t]here is no support in the legislative scheme for the notion that a biological parent's rights must override a child's best interests in determining placement under the dependency statute.

*J.B.S.*, 123 Wn.2d at 8. Because the superior court failed to apply the best interests standard, the order changing placement was reversed. *J.B.S.*, 123 Wn.2d at 11.

The *J.B.S.* court identified a number of factors that should be considered in placement decisions. These factors included the psychological and emotional bonds between the child and its mother, siblings, and foster family; the effect of placement in a foreign country on the child and on the

court's ability to oversee placement; the child's attachment to his father; the father's present circumstances; and the nature of the home in Mexico. Additional factors included the mother's present circumstances and present ability to care for the child. *J.B.S.*, 123 Wn.2d at 11. In making a placement decision, the court must remain mindful "of the legislative preference for placements that least disrupt a child's attachments and sense of stability." *J.B.S.*, 123 Wn.2d at 12.

Criminal history does not automatically disqualify a parent from placement. *J.B.S.*, 123 Wn.2d at 11. Criminal history is relevant, however, to the extent that it may reflect parental fitness or affect a child's welfare. Factors to consider include the seriousness of the crime, the identity of the victim, the parent's conduct before and during incarceration, and the parent's overall regard for parental obligations. *J.B.S.*, 123 Wn.2d at 12.

Here, the trial court construed RCW 13.34.130 both to preclude A.C.'s placement with her maternal grandmother and to require placement with an "available" parent. Based on its statutory interpretation, the trial court rejected Craven's proposed evidence regarding her present abilities as a caregiver and the effects of a change of placement on A.C. Under *J.B.S.*, however, both factors should be considered in a placement determination, and the trial court therefore erred in ruling that any evidence on these issues was automatically irrelevant.

Similarly, the trial court "presumed" that Craven posed at least some risk of harm to A.C. because of her conviction. However, while the conviction and the surrounding circumstances are relevant for purposes of the placement decision, they may not be controlling. *J.B.S.*, 123 Wn.2d at 11-12. More important, whatever the weight to be accorded such a "presumption", the trial court erred by denying Craven any opportunity to present evidence rebutting the presumption. *See Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972) (presumption that unwed father was unsuitable as a parent violated due process).

In summary, we find that the trial court erred in making the placement decision without consideration of all relevant factors because, in so doing, the trial court failed to give paramount consideration to A.C.'s best interests. Under the circumstances here, RCW 13.34.130 did not prohibit continued placement with A.C.'s maternal grandmother or require placement with Riley if either option conflicted with A.C.'s best interests. *See J.B.S.*, 123 Wn.2d at 8.

Craven requests that this court reverse the order of disposition and direct that placement be returned to the maternal grandmother. Under the circumstances of this case, however, we must reject such a request.

First, unlike *J.B.S.*, the trial court here did not expressly state that it could not consider A.C.'s best interests. Although its statutory interpretation prevented it from giving A.C.'s interests paramount consideration, the trial court acknowledged several times that A.C.'s best interests were a factor.

Second, in *J.B.S.* the decision was rendered in the face of a specific finding that the child would suffer separation anxiety or trauma as a result of the change of placement. *J.B.S.*, 123 Wn.2d at 8. Here, however, there was no evidence before the court that the change of placement would be harmful to A.C. The record indicated that A.C. had bonded with both of her parents, and the guardian ad litem, who represents the best interests of the child, testified that she was comfortable with the change of placement. Craven's vague offer of proof, which focused on her current abilities as a caregiver, did not identify any specific evidence indicating that the change of placement would be harmful to A.C.

In addition, the decision here did not involve the drastic change at issue in *J.B.S.*, where the change of placement effectively severed the child from all contact with his mother and foster family. Here, the mother was granted visitation rights that were essentially the same as those previously accorded Riley. In sum, there is no indication in the record that the placement decision involved the type of conflict

between the rights of a parent and the rights of the child underlying the situation in *J.B.S.*

Finally, the passage of time itself prevents any meaningful attempt to restore the circumstances existing prior to the placement decision. As far as the record indicates, A.C. has remained with Riley since October 1992. At least two statutorily required dependency review hearings have occurred since the change of placement. In reviewing A.C.'s dependency status, the trial court necessarily reviewed the appropriateness of the placement. *See J.B.S.*, 123 Wn.2d at 13; RCW 13.34.130(5). The status of the custody proceeding, which was pending at the time of the placement decision, is unknown. In addition, Craven's appeal was unsuccessful, and she may be serving or has just completed the sentence imposed in the criminal case.

As the trial court observed, the placement decision was inherently temporary, and subsequent events may well have rendered it moot. *See generally In re M.A.*, 66 Wn. App. 614, 621, 834 P.2d 627 (1992). Under the circumstances, an order by this court restoring placement to the maternal grandmother, without knowledge of or consideration of current circumstances, would run directly counter to the principles set forth in *J.B.S.*[3]

Judgment affirmed.

---

[3]Craven also contends that the trial court abused its discretion in not continuing the placement decision pending the completion by both parents of the parenting assessments ordered by the family court. However, Craven did not seriously dispute Riley's parenting abilities. Moreover, she had other evidence tending to demonstrate her own abilities as a parent. Consequently, even though the parenting assessments might have contained additional evidence relevant to the placement decision, we cannot say that the trial court abused its discretion in denying the continuance.