IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 34027-9-III |
| | ) | (consolidated with |
| J.P. | ) | No. 34028-7-III |
| | ) | No. 34029-5-III |
| | ) | No. 34060-1-III |
| In the Matter of the Dependency of | ) | No. 34061-9-III) |
| | ) | |
| C.P. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| In the Matter of the Dependency of | ) | |
| | ) | |
| A.P. | ) | |

PENNELL, J. — Father J.P. appeals the trial court's orders finding his three daughters to be dependent, arguing the Washington State Department of Social and Health Services (the Department) failed to present sufficient evidence supporting the finding. Mother M.A. contends the same as to her two daughters. Both parents also argue the court erred in ordering out-of-home placement. We affirm.

FACTS

M.A. and J.P. lived with their three daughters in Ritzville, Washington.[1] The Department filed for dependency after the couple's children were found home alone in a

_____

[1] J.P. is the biological father of the three daughters, A.P., C.P., and Ju.P. M.A. is the biological mother of the two younger daughters, C.P. and Ju.P.

residence that raised health and safety concerns, including a syringe found on the floor.

This was not the couple's first encounter with law enforcement. Throughout 2015, police

had been to the home approximately 20 times based on reports for "[e]verything ranging

from animal complaints to weapons offenses." Report of Proceedings (Dec. 29, 2015) at

119. Many of these contacts involved domestic violence allegations by either M.A. or

J.P. Although the abuse allegations were constant, they were also consistently recanted.

No domestic violence arrests were ever made.

After the Department filed the dependency petitions, the parents moved to

Spokane in order to receive assistance from Supportive Services for Veterans Families.

The parents had obtained housing and J.P. had a job by the time of the dependency

hearing in December 2015.

At the dependency hearing, a law enforcement officer testified to the problems

observed at M.A. and J.P.'s home, including concerns the parents were using

methamphetamine. M.A. and J.P. also testified. Both parents denied the substance abuse

allegations and claimed the Department's concerns were unfounded. Both parents also

reiterated their denials of domestic violence, explaining that past abuse allegations were

either due to misunderstandings or outright lies.

The trial court granted the Department's petitions, finding neither parent was

2

capable of adequately caring for the children. According to the court, "[t]he parents are in denial about the issues that led to the filing of this dependency action. . . . Both parents would appear to have severe mental health, anger and denial issues, which put the children in their care at risk for neglect at least, and possibly abuse." Clerk's Papers (CP) at 83, 221, 349. The court ordered the children be placed with M.A.'s mother. Both parents appeal.

## ANALYSIS

### Sufficiency of Evidence

The parents contest two factual issues: (1) the trial court's purported finding that the parents suffered from severe mental health problems and (2) the finding under RCW 13.34.030(6)(c) that the children were at risk of developmental damage based on the absence of an adequate caregiver. Our review is for sufficiency of the evidence and requires broad deference to the fact finder. *In re Dependency of C.M.*, 118 Wn. App. 643, 649, 78 P.3d 191 (2003).

Going to the first issue, we agree the record lacks competent evidence of any actual mental health diagnoses. But this is beside the point. The trial court did not find the parents suffered from any mental health impairments. Rather, the court found the parents "would *appear* to have severe mental health . . . issues" and may be experiencing

3

a "potential disconnect with reality." CP at 100, 221, 349 (emphasis added). The parents' inconsistent abuse allegations and refusal to acknowledge the health and safety concerns raised by law enforcement provided a sufficient basis for the court to conclude the parents were disconnected from reality in a way that suggested mental health concerns. The court's preliminary mental health finding is supported by sufficient evidence.

The parents' arguments under RCW 13.34.030(6)(c) are also unconvincing when reviewed under the proper deferential standard. The record provides numerous reasons for finding the children's home environment unsafe, including unsanitary conditions, inadequate food, hygiene deficits, lack of supervision, exposure to physical indications of methamphetamine use, and repeated exposure to domestic violence allegations. These environmental deficiencies, coupled with the parents' refusal to acknowledge any need for improvement, suggested the children were at risk of abuse or neglect. While testimony from the Department's social workers was encouraging and suggested the parents' shortcomings could be addressed with appropriate services, the trial court still had a basis for its dependency findings. In addition, the fact that the parents' situation had improved by the time of the dependency hearing was not sufficient to undermine the

4

court's determinations. *See In re Dependency of Brown*, 149 Wn.2d 836, 842, 72 P.3d 757 (2003).

*Disposition*

The parents next challenge the children's out-of-home placement in the disposition orders. We review the court's orders for abuse of discretion. *In re Dependency of A.C.*, 74 Wn. App. 271, 275, 873 P.2d 535 (1994).

Out-of-home placement may be ordered if the trial court finds there is no parent or guardian available to care for a child. RCW 13.34.130(5)(a).[2] While both M.A. and J.P. may have been "available" in the physical sense, they were not available in the sense contemplated by the dependency statute, which focuses on the best interests of the child. The term "available" contemplates "[h]aving the qualities and the willingness to take on a responsibility." WEBSTER'S II NEW COLLEGE DICTIONARY 77 (1995). By completely denying the allegations of parental deficiencies, M.A. and J.P. made themselves unavailable to take on the responsibilities expected of them by the Department and the court. This provided an adequate basis for removal.

Finally, J.P. argues (1) the Department did not make reasonable efforts to prevent

---

[2] Other statutory grounds are possible, but because the statute is written in the disjunctive, only one is necessary.

5

out-of-home care and (2) the court did not identify the specific services the Department offered. The flaw in J.P.'s argument is that reasonable efforts to avoid removal do not have to be made where the children's health, safety, and welfare cannot be adequately protected in the parents' home. *See* RCW 13.34.130(5). The parents' failure to recognize and address repeated concerns about domestic violence supported the trial court's finding that neither parent could, at the time of the hearing, care for the children without placing the children's health, safety, and welfare at risk. The trial court acted within its discretion in ordering out-of-home placement.

## CONCLUSION

Based on the foregoing, the trial court's orders for dependency are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Siddoway, J.

6