**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 22, 2024

González, C.J.
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 22, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 102729-0 |
| | ) | |
| Z.A., S.M.A., and S.A.A., | ) | En Banc |
| | ) | |
| minor children. | ) | Filed: August 22, 2024 |
| | ) | |

GONZÁLEZ, C.J.—Children have "rights of basic nurture, physical and mental health, and safety." RCW 13.34.020. Washington State has a duty to protect these rights, including when they are threatened by abuse and neglect. *See id.*; RCW 26.44.050. Because parents, family members, and guardians also have statutory and constitutional rights the State must respect, that duty must be exercised under law.

Our legislature has partially codified the standards for the State to fulfill its duty in chapter 13.34 RCW, the Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of a Parent and Child Relationship. *See also* ch. 26.44 RCW. To protect the rights of parents and children, chapter 13.34 RCW requires the State to prove in court that certain actions are legally and factually justified. After the most initial stage of a dependency action, parents

have the right to appear before the court, with counsel, to challenge the State's actions and evidence. RCW 13.34.040, .062, .065, .110, .130.

After a child is found dependent, a dispositional hearing must be held. RCW 13.34.110(4). At this dispositional hearing, the State may seek a court order directing that the child be placed out of their family home. RCW 13.34.130(1)(b), (6). The court may order an out-of-home placement if the State proves, among other things and among other alternatives, that there is no parent available to care for the child. RCW 13.34.130(6)(a).

We took review of this case primarily to determine the standard of proof the State must meet to place a child out of their family home under RCW 13.34.130(6)(a). We conclude that the standard of proof is preponderance of the evidence. We reverse the Court of Appeals in part and affirm the trial court's dispositional order.

## FACTS

Given that the underlying dependency case is still pending in the trial court, we will touch on the facts only briefly. MA and DJ have children together. While they were living in Minnesota, MA was held for an extended period of time by federal Immigration and Customs Enforcement (ICE). While MA was in ICE custody, DJ moved with the children to Washington where they had family.

Since that time, DJ has struggled with drug addiction and mental health challenges. There is evidence in the record that her children were in serious risk of harm while in her care. In 2021, a court concluded the children were dependent as to DJ and placed them with their aunt. Some months later, after MA moved back to Washington, the trial court concluded the children were dependent as to him as well.

At the disposition hearing, the Department of Children, Youth, and Family Services (department) argued MA was not available to care for the children under RCW 13.34.130(6)(a) because he did not understand their needs, did not have a plan for caring for them, and would not protect them from dangers presented by their mother's conduct. While MA challenged some of the department's evidence, his main argument was that he was available to care for the children because he was present at the disposition hearing. In his view, when a parent was physically present and willing to take the children, the court could order an out-of-home placement only if it was satisfied that the different and more stringent requirements in RCW 13.34.130(6)(c) had been met. Under that subsection, an out-of-home-placement may be ordered when "[t]he court finds, by clear, cogent, and convincing evidence, a manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed from the home and an order under RCW 26.44.063 would not protect the child from danger." RCW 13.34.130(6)(c).

3

The court rejected MA's argument that the disposition decision must be made under RCW 13.34.130(6)(c) and applied (6)(a) instead. While the court did not articulate a standard of proof, the parties appear to agree it made the decision based on the preponderance of the evidence standard. The court concluded that reasonable efforts had been made to protect the health, safety, and welfare of the children, that MA lacked the skills to care for the children, and that he did not have a realistic plan to do so. The trial court ordered that the children remain with their aunt.

MA appealed, challenging the dependency, the court ordered services, and the disposition. The Court of Appeals largely affirmed. *In re Dependency of Z.A.*, 29 Wn. App. 2d 167, 171, 540 P.3d 173 (2023). It rejected MA's argument that he was "available to care" for the children because he was physically present at the hearing. *Id.* at 195. But it concluded that under .130(6)(a), the department "has the burden to prove by clear, cogent, and convincing evidence that a parent's deficiency jeopardizes the child's rights to conditions of basic nurture, health, or safety in circumstances where an in-home placement would pose a manifest danger to the children." *Id.* at 171. The Court of Appeals remanded for a new dispositional hearing.

Both parties sought review. We granted the department's motion and denied MA's.[1]

ANALYSIS

This case turns on the meaning of a statute: RCW 13.34.130(6)(a). We review the meaning of statutes de novo. *Guillen v. Contreras*, 169 Wn.2d 769, 774, 238 P.3d 1168 (2010) (citing *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004)). Our goal when interpreting statutes "is to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). To make that determination, we consider the statutory language in the context of "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11.

A court's temporary placement decision at a disposition hearing is fact driven and reviewed for abuse of discretion. *In re Dependency of L.C.S.*, 200 Wn.2d 91, 100, 514 P.3d 644 (2022) (citing *In re Dependency of A.C.*, 74 Wn. App. 271, 275, 873 P.2d 535 (1994)). "A trial court abuses its discretion if its decision is manifestly unreasonable or is based on 'untenable grounds, or for untenable reasons,'" such as the misinterpretation of a statute. *In re Detention of*

---

[1] We received amici briefs in support of MA from the Washington Defender Association and King County Department of Public Defense as well as the American Civil Liberties Union of Washington and Civil Rights Corps.

*In re Dependency of Z.A., S.A.A., and S.M.A.*, No. 102729-0

*Duncan*, 167 Wn.2d 398, 402, 219 P.3d 666 (2009) (internal quotation marks omitted) (quoting *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)). Thus, if the trial court interpreted the statute correctly, our review is highly deferential.

First, MA argues that the clear, cogent, and convincing standard of proof applies to decisions under .130(6)(a). We disagree.

RCW 13.34.130(6)(a) does not articulate a standard of proof. The general standard of proof in civil cases, including child welfare cases, is preponderance of the evidence. *See, e.g.*, *In re Welfare of Hall*, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983) (citing *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). Courts have repeatedly found that the preponderance standard of proof for nondispositive decisions like temporary placement at a dispositional hearing satisfies due process. *In re Dependency of Chubb*, 46 Wn. App. 530, 537, 731 P.2d 537 (1987); *see also In re Welfare of A.W.*, 182 Wn.2d 689, 710, 344 P.3d 1186 (2015) (holding the preponderance of the evidence standard was constitutionally adequate in the guardianship statutes). Even a finding of dependency—a decision that has enormous due process implications on a parent— may be based on a preponderance of the evidence. RCW 13.34.110(1).

A higher standard of proof may be required by the legislature, the constitution, or, under some circumstances, the common law. *E.g.*, *id.*; *see also*

6

*In re Dependency of Z.A., S.A.A., and S.M.A.*, No. 102729-0

*Pederson v. Seattle Consol. St. Ry. Co.*, 6 Wash. 202, 204, 33 P. 351 (1893) (turning to common law treatises to establish the higher standard of proof for fraud). But without such a specific departure from the norm, the standard of proof in civil cases is preponderance of the evidence. We find no reason to depart from that standard here.

In 1997, the legislature imposed a higher standard of proof for decisions under what is now RCW 13.34.130(6)(c) by requiring the department to establish clear, cogent, and convincing evidence for out-of-home placements under.130(6)(c). LAWS OF 1997, ch. 280, § 1(b)(iii). The legislature did not impose the clear, cogent, and convincing standard on .130(6) generally, strongly suggesting the legislature meant to confine that standard to determinations under .130(6)(c).

Accordingly, we conclude the legislature intended to impose the preponderance of the evidence standard to RCW 13.34.130(6)(a).

Second, MA argues that a parent is necessarily available under RCW 13.34.130(6)(a) if they appear at the dispositional hearing. In *In re Dependency of W.W.S.*, the Court of Appeals rejected that argument, noting that

> the legislature declared "that the family unit should remain intact *unless a child's right to conditions of basic nurture, health, or safety is jeopardized*." RCW 13.34.020 (emphasis added). Additionally, "[w]hen the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, *the rights and safety of the child should prevail*." RCW 13.34.020

7

(emphasis added). In other words, the best interests of the child are the juvenile court's paramount concern in making placement decisions.

In light of this clear declaration of legislative intent, "available" must refer to something more than physical availability. Otherwise, and contrary to the legislature's declared intent, a child could be placed with a parent even though that placement would jeopardize the child's right to basic nurture, health, or safety.

14 Wn. App. 2d 342, 359, 469 P.3d 1190 (2020) (alteration in original) (citation omitted). Based on the plain language and structure of chapter 13.34 RCW, we agree.

A dispositional hearing is held only after a child has been found dependent, meaning a court has found the child was abandoned; is abused or neglected; has no parent, guardian, or custodian capable of caring for them; or is in extended foster care services. RCW 13.34.110(4), .030(6). At that dispositional hearing, the court may place that dependent child out of the family home only if it finds (1) "that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home and to make it possible for the child to return home," (2) "that prevention services have been offered or provided and have failed to prevent the need for out-of-home placement, unless the health, safety, and welfare of the child cannot be protected adequately in the home," and (3) that

(a) There is no parent or guardian available to care for such child;
(b) The parent, guardian, or legal custodian is not willing to take custody of the child; or
(c) The court finds, by clear, cogent, and convincing evidence, a manifest danger exists that the child will suffer serious abuse or neglect

if the child is not removed from the home and an order under RCW 26.44.063 would not protect the child from danger.

RCW 13.34.130(6). Taken as a whole, "available to care" must mean more than present at the dispositional hearing. Under the plain language, read in context, if a parent is not capable of caring for the child, they are not available to care for the child.

Our interpretation of the statute is bolstered by the fact that since *W.W.S.*, the legislature has taken no action to disapprove of it by legislatively imposing a higher standard of proof. "If the legislature does not register its disapproval of a court opinion, at some point that silence itself is evidence of legislative approval." *1000 Friends of Wash. v. McFarland*, 159 Wn.2d 165, 181, 149 P.3d 616 (2006) (plurality opinion) (citing *State v. Coe*, 109 Wn.2d 832, 846, 750 P.2d 208 (1988)). While four years might not be sufficient time for legislative acquiescence to attach generally, the legislature has amended RCW 13.34.130(6) without disturbing *W.W.S.*'s interpretation of "available to care." *See* LAWS OF 2024, ch. 328, § 104. This strongly suggests the legislature agrees with *W.W.S.*'s interpretation of "available to care." *See Deggs v. Asbestos Corp. Ltd.*, 186 Wn.2d 716, 729, 381 P.3d 32 (2016) (discussing the doctrine of legislative acquiescence).

MA suggests that interpreting "available to care" to mean more than "present in the courtroom" renders RCW 13.34.130(6)(c) effectively meaningless

because the State will always proceed under RCW 13.34.130(6)(a). But, as the Court of Appeals observed in *W.W.S.*:

> there may be circumstances where a parent is "available" in that she has the ability to provide for a child's basic nurture, physical and mental health, and safety, but where an in-home placement would nonetheless pose a manifest danger to the child for other reasons, such as the presence of an abuser or environmental dangers in or around the parent's home.

14 Wn. App. 2d at 360. The legislature has not revised RCW 13.34.130(6) in response to *W.W.S.* despite amending the statute since. We conclude *W.W.S.* was correct that "available to care" means more than physical presence at a hearing. While we must leave further development of that standard for future cases, at the very least when a court concludes a parent does not have the capacity to care for a child, it is not an abuse of discretion to conclude that parent is not available to care for the child under RCW 13.34.130(6)(a).

Third, we respectfully disagree with the Court of Appeals' conclusion that a trial court must find "that a parent's deficiency jeopardizes the child's rights to conditions of basic nurture, health, or safety in circumstances where an in-home placement would pose a manifest danger to the children" to find a parent is not available under RCW 13.34.130(6)(a). *Z.A.*, 29 Wn. App. 2d. at 171. The

legislature required a finding of such manifest danger in RCW 13.34.130(6)(c). If it had intended that showing under .130(6)(a), it would have said so.[2]

We conclude that the trial court applied the correct standard and that MA has not shown the court abused its discretion in doing so.

CONCLUSION

We reverse the Court of Appeals in part, affirm the trial court, and remand for further proceedings consistent with this opinion.

---

[2] MA and amici have raised a variety of constitutional challenges to the plain-language reading of the statute we adopt today. We decline to reach the merits of these arguments as they are not properly before us under RAP 2.5(a).

_____
Gonzáles, C.J.

WE CONCUR:

_____ _____
Johnson, J.        Gordon McCloud, J.

_____ _____
Madsen, J.        Yu, J.

_____ _____
Owens, J.        Montoya-Lewis, J.

_____ _____
Stephens, J.        Whitener, J.