FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

OCTOBER 17, 2024

_Conzález C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 17, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Dependency of<br><br>E.M., J.M., and I.M., | No. 103129-7<br><br>EN BANC<br><br><br>Filed: October 17, 2024 |

PER CURIAM—This case concerns the procedures prescribed by statute for child dependency proceedings. When the Department of Children, Youth, and Families (DCYF) files a dependency petition, the trial court must hold a "fact-finding hearing," which is subject to the rules of evidence. RCW 13.34.110(1). At the fact-finding hearing, the department has the burden of establishing by a preponderance of the evidence that the child is "dependent," as defined by statute. *Id.* If the child is found dependent, the court "shall hold a disposition hearing" to determine placement, services, and visitation. RCW 13.34.110(4). In contrast to the fact-finding hearing, the rules of evidence do not apply at the disposition hearing. ER 1101(c)(3).

In this case, J.M.L., the father of E.M., J.M., and I.M., agreed that his children were dependent, but he opposed the department's request that he participate in

a domestic violence (DV) assessment and any recommended treatment. Following a disposition hearing, the trial court granted the department's request for DV services and J.M.L. appealed, arguing in relevant part that the trial court erred in considering hearsay evidence offered by the department.

The Court of Appeals agreed that the hearsay statements should have been excluded pursuant to the rules of evidence, opining that the hearing on DV services was not actually a disposition hearing but "was, in effect, a continuation of the dependency fact-finding hearing." *In re Dependency of E.M.*, No. 84605-1-I, slip op. at 9 (Wash. Ct. App. Apr. 29, 2024) (unpublished), https://www.courts.wa.gov /opinions/pdf/846051.pdf. Nevertheless, the Court of Appeals affirmed in result, holding that "[t]he findings of fact in the agreed dependency order were alone sufficient" to support the order for DV services. *Id.* at 13.

We granted review to clarify that dependency fact-finding hearings and disposition hearings are separate proceedings, subject to different rules, serving different purposes. A trial court's determination of services is part of the disposition hearing, at which the rules of evidence do not apply. Accordingly, the trial court did not err in considering hearsay statements at the hearing on DV services in this case. We affirm the Court of Appeals in result, and we affirm the trial court's dispositional order requiring J.M.L. to participate in DV services.

FACTS

Prior to the department's involvement with J.M.L.'s family, he was arrested in January 2020 after his children's mother reported a DV incident to police. J.M.L. entered a stipulated order of continuance in which the State agreed to dismiss the charges without prejudice if J.M.L. had no hostile contact with any intimate partner, family member, or household members and did not violate any criminal laws. But a

year later, in January 2021, the mother reported to the police that J.M.L. had again assaulted her in their home.

After the birth of the couple's third child in late 2021, the department filed a dependency petition, initially focused on the mother's alcohol abuse, and the parents agreed to a shelter care order. The department later filed an amended petition, noting that J.M.L. had a pending fourth degree assault charge related to a DV assault of the mother, and that he had entered a stipulated order of continuance in which he agreed to not have hostile contact with the mother through May 2023.

In May 2022, J.M.L. was arrested following another alleged assault of the mother. The department moved for the children to be placed out of home with monitored visitation, arguing in part that they were being exposed to DV. The superior court entered an agreed order of dependency as to J.M.L., which included agreed, non-DV facts establishing dependency. Additionally, while the father did not admit to the alleged DV, he did agree that the court could read specific DV allegations in determining a basis for dependency:

> I do not object to the court reading the following allegations and determining a basis for dependency therefrom.
> ….
> 1. [J.M.L.] has been alleged to commit acts of domestic violence against [the mother].
>     i. [J.M.L.] was charged with Assault 4 DV against [the mother] in January 2020 and May 2022. There is currently an active no contact order restricting [J.M.L.] from having contact with [the mother].
>     ii. DCYF received a report that following an argument between the parents there was broken glass on the floor and the children were observed running around barefoot.
>     iii. The social worker has observed injuries on [the mother]'s body, including a swollen lip, scab above her lip, a cut inside her lip, and swollen nose, that [the mother] reported were caused by from [J.M.L].
>     iv. Following a reported DV incident in May 2022, [E.M.] told his therapist that his father hurt his mother and said "my dad was sitting on top of her" and "I was scared and sad." [The mother] also reported a prior incident where [J.M.L.] strangled her while the children were home.

Clerk's Papers (CP) at 602-03. The court ordered J.M.L. to participate in several agreed services but reserved its decision as to DV services pending a disposition hearing.

At the disposition hearing, the department submitted a declaration from the assigned social worker describing a phone call from the mother about the May 2022 assault, as well as the social worker's observations of injuries on the mother's face, reportedly from the assault. The declaration also stated that one of the children, E.M., had reported to his therapist that the May 2022 assault was frightening because the mother was "'bleeding'" and J.M.L. "'was sitting on her head.'" *Id.* at 741. The department also submitted J.M.L.'s stipulated continuance from his January 2020 arrest (which included the police report from the assault), the arrest reports from the January 2021 and May 2022 incidents, and notes from E.M.'s therapist.

J.M.L. acknowledged that because it was a disposition hearing, the rules of evidence did not apply. Nevertheless, he argued that the hearsay evidence submitted by the department should be given little weight because it was "not, on its face, reliable." Verbatim Rep. of Proc. (Oct. 13, 2022) at 15. The court noted that due to the status of the hearing, it was allowed to consider hearsay evidence and ultimately ruled:

> [B]ased on the hearsay evidence that is before me today, I am finding by a preponderance of the evidence is the applicable standard. But, even if it is not, I am finding by clear, cogent, and convincing evidence that there is a nexus between the need for this service and the parental deficiency that the father has, that the children witnessing domestic violence in the household, and there is a need for a domestic violence evaluation and follow-up treatment.

*Id.* at 19. The court then entered an order finding that the children had witnessed DV in the home and that there was a nexus between J.M.L.'s parental deficiency and the need for the DV assessment and recommended treatment. CP at 112-13. J.M.L. sought review in the Court of Appeals, and while review was pending, he completed the DV

assessment and was granted derivative use immunity, preventing any possible violation of his Fifth Amendment rights.

The Court of Appeals ultimately affirmed the disposition order.[1] However, the court held that pursuant to the rules of evidence, the hearsay evidence submitted by the department should have been excluded. Although the rules of evidence do not apply at disposition hearings, the Court of Appeals opined that the hearing on DV services was actually part of the fact-finding hearing in this case, reasoning that the only purpose of a disposition hearing is to address a dependent child's placement. Nevertheless, the Court of Appeals held that "[t]he findings of fact in the agreed dependency order were alone sufficient" to affirm in result. *E.M.*, No. 84605-1-I, slip op. at 13.

As noted, we granted J.M.L.'s motion for discretionary review to clarify the difference between dependency fact-finding hearings and disposition hearings.

ANALYSIS

J.M.L. contends that the Court of Appeals departed from statute, precedent, and long-settled practice in holding that services for a parent must be ordered in a dependency fact-finding hearing instead of a disposition hearing. The department concedes that the Court of Appeals erroneously characterized the hearing on DV services as part of the fact-finding hearing in this case. We agree with the parties. When read together, the dependency statutes show that a determination of court-ordered services is part of a disposition hearing, not a fact-finding hearing. The rules of evidence do not apply at disposition hearings. ER 1101(c)(3). Therefore, the trial court properly considered the department's hearsay evidence at the disposition hearing on DV services

---

[1] The court determined that the father's appeal was not moot because his refusal to participate in the court-ordered treatment could be used against him in future proceedings, and he sought relief from having to comply with DV treatment recommendations.

in this case. Nevertheless, we agree with the department that the Court of Appeals reached the correct result in affirming the superior court's order for DV services.

To resolve the procedural question presented here, we must read the dependency statutes as whole. First, when a dependency petition is filed, the trial court

> shall hold a fact-finding hearing on the petition and, unless the court dismisses the petition, shall make written findings of fact, stating the reasons therefor. The rules of evidence shall apply at the fact-finding hearing …. The petitioner shall have the burden of establishing by a preponderance of the evidence that the child is dependent within the meaning of RCW 13.34.030.

RCW 13.34.110(1). This statute does not include services as part of the "fact-finding" determination. To the contrary, the sole consideration at the fact-finding hearing is whether "the child is dependent" as defined by statute. The statutory definition of a "dependent child" does not reference services for the parent. RCW 13.34.030(6).

Next, if it has been proved that a child is dependent, "[i]mmediately after the entry of the findings of fact, the court shall hold a disposition hearing, unless there is good cause for continuing the matter for up to fourteen days." RCW 13.34.110(4). Following the disposition hearing, RCW 13.34.130 provides that the court must enter an order of disposition that either maintains the child in their home with "services to assist the parents in maintaining the child in the home" or removes the child from their home to an "out-of-home placement." RCW 13.34.130(1)(a), (6). Where the child is removed from their home, RCW 13.34.130 specifies placement preferences for the child based on various considerations.

Here, the Court of Appeals purported to "clarify the distinction between a dependency fact-finding hearing and a disposition hearing" by reading RCW 13.34.130 in isolation, holding that the sole purpose of a disposition hearing is "to determine the placement of the children." *E.M.*, No. 84605-1-I, slip op. at 7-8. Based on this

interpretation, the court concluded that the hearing on DV services in this case "was, in effect, a continuation of the dependency fact-finding hearing and the rules of such a hearing applied," including the rules of evidence. *Id.* at 9-10. However, this analysis fails to read the dependency statutes as a whole.

As noted above, the plain language of RCW 13.34.110(1) provides that the purpose of a fact-finding hearing is to determine whether the child is dependent. "'[O]nce intervention into the family's life is authorized by the establishment of dependency, the court can require a parent to participate in a service when the circumstances in the record support the particular service.'" *In re Dependency of W.W.S.*, 14 Wn. App. 2d 342, 363, 469 P.3d 1190 (2020) (emphasis omitted) (quoting court papers). In other words, the issue of services is relevant only if the court first determines that the child is, in fact, dependent. Thus, the issue of services cannot be confined to the initial dependency fact-finding hearing, as the Court of Appeals held.

Moreover, the Court of Appeals' analysis does not account for the statutory provisions governing stipulated and agreed orders in dependency proceedings, which are directly relevant here. Parents may enter stipulated or agreed orders as to "dependency," or "disposition," or both, "subject to approval by the court." RCW 13.34.110(3)(a), (b). Agreed orders of dependency and disposition may be considered "at the same time," if the parent agrees to both. RCW 13.34.110(3)(a). However, the statute clearly contemplates such orders may be considered separately, providing that if a parent agrees to an order of *dependency*, the court must establish on the record that the parent understands their "responsibility to participate in remedial services as provided in *any disposition* order." RCW 13.34.110(3)(c)(i) (emphasis added).

Thus, a parent may agree that their child is dependent but disagree as to the disposition of the case. That is what occurred here; J.M.L. entered an agreed order of dependency, but he disputed the appropriate disposition as pertaining to DV-related services. Before deciding whether to order such services, the trial court was required to "receive and review a social study" from the department, which must "include all social files and may also include facts relating to the child's cultural heritage." RCW 13.34.110(3)(b), .120(1). Importantly, this "social study" cannot be considered "in connection with the *fact-finding hearing* or prior to factual determination, except as otherwise admissible under the rules of evidence." RCW 13.34.110(3)(b) (emphasis added). Instead, the purpose of the "social study and proposed service plan" is "[t]o aid the court in its decision on *disposition*." RCW 13.34.120(1) (emphasis added); *see also In re Dependency of M.R.*, 166 Wn. App. 504, 520 n.2, 270 P.3d 607 (2012) ("RCW 13.34.120 addresses entry of a disposition order following the establishment of a dependency.").

Thus, contrary to the Court of Appeals' interpretation, the dependency statutes as a whole clearly contemplate remedial services for the parent as part of the disposition hearing. The Court of Appeals decision is also contrary to published case law holding that a trial court "may order services to facilitate parent-child reunification" only *after* "'intervention into the family's life is authorized by the establishment of dependency.'" *In re Dependency of D.C.-M.*, 162 Wn. App. 149, 158, 253 P.3d 112 (2011); *W.W.S.*, 14 Wn. App. 2d at 363 (quoting court papers); *see also In re Dependency of Z.A.*, 29 Wn. App. 2d 167, 197, 540 P.3d 173 (2023), *rev'd in part on other grounds*, 3 Wn.3d 530, 553 P.3d 1117 (2024).

Here, the hearing on DV services was part of the disposition hearing, not a fact-finding hearing. Because it was a disposition hearing, the rules of evidence did not apply, and the trial court properly considered hearsay evidence submitted by the department. This hearsay evidence, along with other evidence in the record, supports the trial court's finding that there is a nexus between J.M.L.'s need for DV services and his parenting deficiencies. Therefore, J.M.L. has not shown that the trial court abused its discretion.

## CONCLUSION

The Court of Appeals erred in holding that the determination of services was an extension of the dependency fact-finding hearing. We clarify that the determination of services is part of the disposition hearing. Nonetheless, we affirm in result and we affirm the trial court's order requiring J.M.L. to participate in DV services.